IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KEVIN MCBURNETT                                                          PLAINTIFF

v.                                          No. 4:06CV00628 JMM

SOCIAL SECURITY ADMINISTRATION                                          DEFENDANT

## ORDER

Plaintiff has appealed the final decision of the Commissioner of the Social Security

Administration (the "Commissioner") denying his claim for Disability Insurance Benefits (DIB) and

Supplemental Security Income (SSI ). The parties have submitted their appeal briefs,[1] and the issues

are now joined and ready for decision.

The Court's function on review is to determine whether the Commissioner's findings are

supported by substantial evidence on the record as a whole.[2]

> Substantial evidence is less than a preponderance, but is enough that a reasonable
> mind would find it adequate to support the Commissioner's conclusion. In
> determining whether existing evidence is substantial, we consider evidence that
> detracts from the Commissioner's decision as well as evidence that supports it. As
> long as substantial evidence in the record supports the Commissioner's decision, we
> may not reverse it because substantial evidence exists in the record that would have

---

[1]Plaintiff's brief was filed on October 6, 2006, and the Commissioner's brief was filed on
November 13, 2006.

[2]Plaintiff had the burden of proving his disability by establishing a physical or mental
impairment lasting at least one year that prevents him from engaging in any substantial gainful
activity. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); Baker v. Apfel, 159 F.3d 1140, 1143 (8th
Cir. 1998); Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

supported a contrary outcome, or because we would have decided the case differently.

Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000) (citations omitted).

Plaintiff filed an application for SSI on February 17, 2004, and his application for DIB on March 8, 2004, alleging that he became disabled on February 13, 2003,[3] due to a back injury, an eye injury with 100% blindness in the right eye, and cut tendons in his left hand (Tr. 46). He met the special earnings requirements for DIB through December 2004 (Tr. 50). His claims were denied initially and upon reconsideration (Tr. 31, 37). Pursuant to plaintiff's request, a hearing was conducted by the Administrative Law Judge (ALJ) on August 9, 2005 (Tr. 306). Also present and testifying was Jerry Miller, M.Ed., a vocational expert (VE).

Plaintiff was 42 years old on the date of the hearing (Tr. 309). He left school during the 10th grade, has obtained a GED, and has past relevant work (PRW) experience as a master electrician (Tr. 309-310).

At the hearing, plaintiff testified that he had last worked in September of 2003 although he tried a three-week period of doing electrical work, but was told that he was not even journeyman material while he was a master (Tr. 311). He injured his left hand in February of 2003,[4] and, although it is not his dominant hand, the injury affects his ability to use that hand for fine manipulation such as holding screws and getting change out of his left pocket while he can use it for picking up objects like weights or two by fours (Tr. 313, 318). However, plaintiff is able to button his shirt, tie his shoes, wash dishes, change sheets, do laundry, vacuum, mop and sweep although

---

[3]Plaintiff's counsel amended the alleged onset date to September 12, 2003, at the August 9, 2005 hearing (Tr. 308-309).

[4]His girlfriend cut his left hand during an argument (Tr. 325).

not as fast as he use to be (Tr. 313-314, 322-323).  He can carry a 20 pound sack of flour from the grocery store because he has his right hand (Tr. 314).

Plaintiff testified that he has problems with depth perception and fell and injured himself because of that in March of 2005 (Tr. 314).  He also reported that he had broke three vertebras in his back a long time ago so that his lower back hurts all the time with sometimes the pain radiating to his knees (Tr. 314-315).  Plaintiff stated that he had taken effective pain killers from time to time, but could not stay on them because of his past problems with alcohol (Tr. 315).  He testified that he was on various medicines before he stopped working in 2003 due to domestic problems with resulting jail time and anger and while he was taking the medication pretty regularly, he had gotten off them for a little, but was fixing to get back on them again from Little Rock Community Mental Health since he could not afford anything (Tr. 316-317).  Plaintiff stated that he had left alcohol alone since 2003 as well as drugs except prescribed ones (Tr. 317).

Plaintiff testified that he had originally injured his eye when he was in the seventh grade, but lost it from an altercation with his girlfriend in September of 2003 (Tr. 312, 317).[5]  He also stated that he sometimes has problems with headaches (Tr. 318).  When asked if he had problems standing, plaintiff responded that he had no problems with sitting, but he can only stand a few minutes without needing to walk before his lower back starts hurting and he would rate the pain at a level five if he stood in one spot for 30 minutes (Tr. 319).  Plaintiff stated that he can walk okay, but it depended on the terrain due to the injury on his left leg and his depth perception (Tr. 319).

---

[5]His girlfriend threw a brick through the passenger side of the windshield where he was sitting and he got glass in his eye (Tr. 324-325).

He mentioned that he sometimes has problems with his left eye when the words "all blur together," but he watches TV and does not drive since he lost his license because of a DWI (Tr. 320, 323).[6]  Plaintiff stated that he has taken Percocet for a couple of weeks or months after he has received an injury that is healing, but was not on anything at that time (Tr. 321-322).

He testified that a typical day consists of making and drinking some coffee, watching TV, running errands with his sister while she took him to appointments, would cook, and take a nap (Tr. 322-323).  Plaintiff stated that he went to church with his sister and brother-in-law driving three times a week (Tr. 323).  He agreed that his sight problems were his most handicapping condition to be followed by his back and then his left hand (Tr. 324).

Plaintiff was questioned by the ALJ about the UAMS medical records regarding detox options and plaintiff explained that he voluntarily came to the hospital, but there was no bed available (Tr. 328).  He admitted that he had only drank a couple of times since April of 2005 and admitted that he injured his leg when he was inebriated (Tr. 328-329).  During questioning by his attorney, plaintiff stated that he was treated by Greater Little Rock Mental Health from 2002 through March of 2004 for alcohol condition depression which was in remission and with the use of anti-depressants (Tr. 329-330).

The VE assessed plaintiff's work as an electrician with an exertional level of medium and skilled with transferrable skills to light and semi-skilled (Tr. 331).  The ALJ posed a hypothetical individual that was 42 years of age with a ninth grade education plus a GED who can lift 40 pounds occasionally, can stand and walk for a total of six hours out of an eight hour work period, two hours

---

[6]Plaintiff also testified that, about ten months previously, he experienced "synthetic" where 15 percent of people who lose one eye end up losing the other one, but it cleared up (Tr. 320).

without any interruption, can occasionally climb, balance, stoop, crouch, kneel and crawl, has no significant impairment ability to reach or to handle or feel, can push/pull 40 pounds, is blind in the left eye with 20/20 in the right eye, with no impairment in the ability to hear or speak, probably would not work at heights and no other environmental restrictions (Tr. 331-332).  The VE answered that individual would not be able to engage in PRW, but would be able to perform other jobs in the regional or national economy such as cashier – classified as light, unskilled with about 20,000 plus jobs in Arkansas and 100,000 plus in the region; housekeeping or office cleaner – light, unskilled with about 6,000 jobs in Arkansas, 100,000 plus in the region; cafeteria attendant – light, unskilled with about 900 to 1,000 jobs in Arkansas and 30,000 in the region; and sales attendant in a self-service store – light, unskilled with about 900 jobs in Arkansas and 10,000 in the region (Tr. 332).

When the VE was questioned by plaintiff's counsel about the impact to the hypothetical for a cashier or sales attendant if the individual had difficulty in handling small objects and a depth perception problem, he stated a person could work at a convenience store or something like that, but admitted that it would depend on how limited the person would be (Tr. 333-334).  The attorney then posed a different hypothetical of the same 42-year-old person with a ninth grade education and a GED who can lift 10 to 20 pounds, had the ability to stand or sit six hours a day, two hours at a time, but still occasionally be able to climb, stoop, balance, crawl, and kneel, would be able to push and pull up to 20 pounds, would have some limitations and ability to handle small objects and work at persistence and pace due to blindness in the right eye and if he could do all the jobs at the light level of cashier, housekeeping, cafeteria attendant or sales attendant (Tr. 335).  The VE responded that if the person could not keep up with the normal work period, then the jobs would not be available (Tr. 335).  However, the VE did state that interaction as a sales attendant, as opposed to a sales person,

keeps the clothes on a rack, cleans ups the dressing room, and other various things (Tr. 336).  When

the VE was asked it the individual were more restricted in his ability to use one of his hands as

enumerated in his ability to perform high level tasks if that would impact the jobs, the VE responded

that it would on the cashier's job and housekeeping as the person generally has the ability to use both

hands (Tr. 337).  Finally, the ALJ inquired if it would make any difference to his hypothetical

number one if the individual was blind in the right eye and had 20/20 vision in the left eye and the

VE stated that it did not (Tr. 337).

The ALJ undertook the familiar five-step analysis in determining whether plaintiff was

disabled.[7]  He found  that plaintiff had not engaged in substantial gainful activity since the alleged

onset of disability (Tr. 13).  The ALJ further found that plaintiff has a history of treatment for an

injury to his right eye, a laceration of a tendon in his left hand, left ankle fracture and repair, back

pain, alcohol addiction, opioid abuse, and alcohol-induced depression and has a "severe"

impairment, but that he does not have an impairment or combination of impairments listed in or

medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 13).

The ALJ's written opinion reflected a review of the medical records.  He found that the

medical evidence showed that plaintiff has a history of back pain from a motorcycle accident in 1977

for which he received no treatment at the time (Tr. 269).  The ALJ stated that May 2004 lumbar x-

---

[7]The five-step sequential evaluation is as follows: (1) whether the claimant is currently
engaged in substantial gainful activity; (2) whether he or she has a severe and medically
determinable physical or mental impairment; (3) whether the claimant may be deemed disabled
because  the impairment meets or equals a listed impairment in Appendix 1 to Subpart P, Title
20, Code of Federal Regulations; (4) whether the claimant is able to return to past relevant work,
despite the impairment; and if not (5) whether the claimant can perform any other kind of work.
20 C.F.R. §§  416.920 and 404.1520.  See, <u>Cox v. Barnhart</u>, 345 F. 3d 606, 608 n. 1 (8th Cir.
2003).

rays showed grade I-II anterior lithosis of L5-S1, likely representing a bilateral pars defect of L5; the condition appearing stable over the interval according to an earlier CT scan; and a compression fracture of T11 was noted possibly from an earlier acute injury (Tr. 116). He further stated that plaintiff has no sight in his right eye due to an injury from an altercation that occurred in September of 2003 (Tr. 14). The ALJ continued that plaintiff underwent two surgeries in 2003, but he testified at the hearing that he now has a prosthetic eye (Tr. 14). He stated that plaintiff injured his left hand in May of 2003 when he was cut by a knife in a different altercation where he went a tenorrhaphy of the extensor tendons to the left index finger which plaintiff tolerated well and upon re-check a week later, the posture of the finger was satisfactory (Tr. 14, 166, 171). The ALJ also noted that plaintiff fractured his left ankle, the left malleolus and left posterior malleolus in March of 2005 which was repaired via open reduction/internal fixation on March 14, 2005 (Tr. 14, 232-234).

The ALJ next discussed the consultative general physical examination performed by Dr. Patricia Knott where it was noted that plaintiff's ankle had healed well and he did not have a lot of pain in the ankle itself. Dr. Knott reported, after the examination, that plaintiff is blind in his right eye; motor strength is good to the upper extremities bilaterally and good to the lower extremities; sensation is intact; deep tendon reflexes are 2+ throughout bilateral upper extremities; 2+ knee jerks and 1+ ankle jerks were noted; no clonus was noted; Babinski was negative; no atrophy noted to the upper or lower extremities; tendon damage to the left forefinger with flexion at the PIP joint at approximately 45º; left wrist dorsiflexion was 28º, plantar flexion was 35º, ulnar deviation was 20º and radial deviation was 25º; and the left ankle was 10º dorsiflexion and plantar flexion. Plaintiff had, on lumbar range of motion, full forward flexion, extension, left and right rotation and left and right lateral bending without any obvious discomfort; he was able to squat okay; straight leg raising

was negative; he can stand and walk for up to 8 hours in an 8 hour period (2 without interruption); can sit for up to 4 hours in an 8 hour work period (2 without interruption); can occasionally climb, balance, stoop, crouch, kneel and crawl; can frequently grasp, manipulate, handle, feel, push and pull and reach with the right hand (occasionally with his left hand); has no significant impairment in his ability to hear or speak; and can tolerate only moderate exposure to heights, moving machinery and vibrations. (Tr. 14-15, 269-273).

Continuing, the ALJ, despite no allegation of disability due to mental impairment, reviewed the medical record which showed that plaintiff has a history of mental health treatment including diagnoses for alcohol addiction, alcohol-induced depression, a history of opioid abuse, dysthymic disorder, adjustment disorder with depressed mood, and antisocial personality traits (Tr. 15, 81-95). He noted that, by history, plaintiff was previously treated for opioid abuse in a methadone program, was treated inpatient for alcohol addiction, and was again seeking admission to such a program in April of 2005 (Tr. 15, 230).  The ALJ stated that, particularly during times of alcohol/substance abuse remission, plaintiff's Global Assessment of Functioning Scale (GAF) scores were in the 60-65 range (Tr. 15, 81-95).  As of March of 2004, plaintiff was being treated with Remeron, Trazadone, and Klonopin (Tr. 15).

The ALJ went through the revised "B" and "C" criteria for mental impairments listed in Appendix 1 of the 20 C.F.R. 404.1520a and 416.920a finding that plaintiff's daily activities are not more than slightly limited due to his mental impairment; plaintiff does not report and he does not have a marked degree of limitation in social functioning; plaintiff has not alleged limitations in his ability to maintain concentration, persistence and pace; there have been no actual episodes of deterioration or decompensation in work settings; and plaintiff's mental difficulties appear to be

adequately controlled with medication and psychosocial support, he has had no episodes of decompensation, and has never required any supported living arrangement (Tr. 15-16).

The ALJ concluded, after considering plaintiff's history and treatment, the objective clinical findings, the subjective complaint, the observations and comments of his treating sources, and all of the medical evidence in the record as a whole, that plaintiff retained the RFC for light work as he can lift, carry, push and pull up to 40 pounds occasionally; can stand and walk for up to 6 hours in an 8 hour period (2 without interruption); can sit for up to 6 hours in an 8 hour work period (2 without interruption); can occasionally climb, balance, stoop, crouch, kneel, and crawl; is not significantly limited in his ability to reach, handle, feel, hear, speak, or see with his left eye; cannot see with his right eye; and cannot tolerate exposure to heights (Tr. 16).

The ALJ evaluated plaintiff's subjective allegations and complaints pursuant to the criteria set forth in Polaski v. Heckler, 739 F. 2d 1320 (8th Cir. 1984).[8] He noted that the medical findings are not consistent with the disabling level of symptoms alleged by plaintiff and that the fact that plaintiff may have some level of discomfort was given due consideration in reaching the finding that he would be limited to light work with the limitations described. The ALJ stated that it does not appear that any physician has placed the limitation that plaintiff is unable to work at all because of his conditions. He further observed that plaintiff's daily activities include bathing, dressing, shaving, and hair care; doing the laundry and changing sheets; going to the post office; preparing some meals; paying bills, using a checkbook, and counting change; walking for exercise or errands; attending

---

[8] These include the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) other treatments for relief of pain; and (6) functional restrictions.

church, watching TV, and listening to the radio; and visiting friends and relative – which are inconsistent with the alleged level of pain.  The ALJ found that the record for treatment for the conditions immediately followed each acute injury, but nothing further and, for example, no evidence that any less conservative treatment for his back pain has been sought or recommended. He continued that plaintiff has received minimal medical treatment or has taken prescription pain medicine only in the immediate aftermath of his injuries and there is no ongoing pain management (Tr. 16-17).

The ALJ also found, based on the testimony of the VE, that the limitations he posed in his hypothetical would preclude the performance of plaintiff past job as an electrician, but there are jobs existing in significant numbers that are consistent with the vocational profile and limitations such as cashier, housekeeper/office cleaner, cafeteria attendant, and sales attendant which can be performed with an individual with the complete loss of one eye and these finding are consistent with the Dictionary of Occupational Titles.

In addition, the ALJ found that as plaintiff was "not disabled,"further analysis of the impact of his substance abuse on allegations of disability was unnecessary (Tr. 18).  He noted that the opinion of the state agency medical consultant was considered, but the record had been supplemented with testimony and additional medical evidence so that plaintiff's RFC is consistent with the record as a whole.  Finally, the ALJ stated that he had considered the October 14, 2005 letter of plaintiff's attorney (Tr. 18).

Therefore, the ALJ found plaintiff not to be disabled (Tr. 17-18).

Plaintiff requested review of the ALJ's decision (Tr. 9).  The Appeals Council denied his request for review on April 6, 2006 (Tr. 5-8).  On June 2, 2006, plaintiff filed this action pursuant to 42 U.S.C. §405(g).

Plaintiff contends that the ALJ erred in heavily relying on the consultative general exam by Dr. Patricia Knott.  He asserts that the ALJ states that the exam was performed on October 24, 2005, when it was really performed on September 29, 2005; certain of the findings are internally inconsistent; and there is no mention of plaintiff's GAF of 40 nor his treatment with Remeron, Trazadone and Klonopin as well as Lexapro.  Plaintiff argues that the ALJ failed to reconcile Dr. Knott's ambivalent findings regarding his ability to use his dominant hand and his ability to stand. He continues that the ALJ discounted plaintiff's credibility based on his failure to follow prescribed treatment although more significant criteria would be the objective radiographic evaluations, the "trusted" opinion of Dr. Derek Lewis, a consultative examinor, and the opinion of the Jones Eye Clinic.  Plaintiff also contends that the ALJ did not ask the VE a properly framed hypothetical question in failing to properly identify plaintiff's RFC and or clarify that the jobs identified are all light jobs that would have to be excluded based on Dr. Knott's finding that plaintiff would have difficulty standing.

While the ALJ erred in stating the wrong date for the examination by Dr. Knott, that does not diminish the contents of the analysis.  To plaintiff's argument that Dr. Knott made no finding as to how long he could sit without interruption, plaintiff testified at the hearing that he had no problems with sitting and he told Dr. Knott that he could sit and walk without problems (Tr. 269, 319).  As the Commissioner points out in his response, the ALJ has the responsibility of evaluating plaintiff's RFC on the record as a whole.  Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005); Pearsall v.

<u>Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001)("It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations.")

The Court also agrees with the Commissioner that there is no a conflict in Dr. Knott's report regarding plaintiff's ability to stand.  While it is correct that plaintiff told her that he could only stand for thirty minutes and she stated, under the impressions portion of the report, that he has difficulty with standing, the examination itself, as set out by the ALJ, showed motor strength without atrophy, full range of lumbar motion, negative straight leg raising and ability to squat.  Moreover, Dr. Knott noted that plaintiff stated he could sit and walk without problems.  Thus, it is important to note that where Dr. Knott indicated 8 hours on the medical assessment, it was for the capacity to "stand <u>and/or</u> <u>walk</u>."(emphasis supplied).  Therefore, the Court does not find there to be a conflict.  Furthermore, the ALJ was entitled to rely on his review of the entire record, including daily activities,  in making his determination as to plaintiff's ability to stand.  While it is unfortunate that once Dr. Knott's report does refer to "difficulty with any dexterity of his right hand," it was in the context of "secondary to the index finger tendon injury" which was correctly noted immediately above that as "left index finger tendon injury."  Moreover, the range of motion chart correctly identified the hand and wrist limitations for the "left."

The Commissioner has correctly countered that the ALJ did refer to plaintiff's treatment with Remeron, Trazadone and Klonopin and did discuss plaintiff's GAF scores by noting that they were in the 60-65 range during times of alcohol/substance abuse remission.  As argued by the Commissioner, the implication is that plaintiff's GAF scores were lower when he was not in remission.  The ALJ did discuss plaintiff's mental health records, including his use of medications,

-12-

in evaluating the criteria for mental impairments before concluding that no mental limitations were warranted.

Turning to plaintiff's argument concerning the ALJ's credibility determination of plaintiff, the Court once again agrees with the Commissioner that the ALJ not only relied on plaintiff's failure to follow prescribed treatment, but noted that plaintiff only sought treatment immediately after an injury but nothing further, plaintiff has not sought or received any recommendations for any less conservative treatment for his back pain or ongoing pain management, plaintiff's use of prescription pain medication only immediately in the aftermath of an injury and not on an ongoing basis,[9] pointed to the numerous daily activities performed by plaintiff, and the lack of objective clinical findings supporting symptoms or functional limitations to the extent alleged.  As pointed out by the Commissioner, while Dr. Derek Lewis noted that plaintiff was unable to close his left hand and he had decreased strength in his left hand, Dr. Lewis did not identify any probable limitations and found that plaintiff was not disabled.

The hypothetical question submitted to the VE was consistent with the limitations that the ALJ had found to constitute plaintiff's RFC.  Although plaintiff argues that all the jobs identified by the VE would be excluded by Dr. Knott's finding that plaintiff would have difficulty standing, the Court has already addressed the proper context of Dr. Knott's entire evaluation and the ALJ's consideration of the other evidence in the record in formulating the hypothetical question.  A properly phrased hypothetical question, as posed by the ALJ here, constitutes substantial evidence. Warburton v. Apfel, 188 F. 3d 1047, 1050 (8th Cir. 1999).

---

[9] See, Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005).

"Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled." <u>Lowe v. Apfel</u>, 226 F.3d 969, 973 (8th Cir. 2000).  See also, <u>Masterson v. Barnhart</u>, 363 F.3d 731, 737 (8th Cir. 2004).

In sum, the Court finds that there is substantial evidence to support the Commissioner's decision that plaintiff was not disabled.

Accordingly, the Commissioner's administrative decision is hereby AFFIRMED.

IT IS SO ORDERED this 16th  day of July, 2007.

UNITED STATES DISTRICT JUDGE